IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alexandra Avchukov, Quentin Chappat, - and - Sandra Maesta Pereira *on behalf of themselves and all others similarly situated,* <br> Plaintiffs <br><br> v. <br><br> Avant Gardner, LLC, EZ Festivals, LLC, -and- Jurgen Bildstein <br> Defendants | Case No. 1:23-CV-8197 <br><br> **CLASS-ACTION COMPLAINT** <br><br> *JURY DEMANDED* |

## INTRODUCTION

1) Defendants Avant Gardner, LLC and Jurgen Bildstein are the owners of several nightlife ventures in New York City, including a permanent venue known as "Brooklyn Mirage" and Defendant EZ Festivals, LLC's annual music festival known as "Electric Zoo."

2) During this year's three-day Electric Zoo, Defendants drastically oversold the event, they failed to obtain proper permitting and staffing to operate a safe venue, and they failed to adequately construct the facilities required to operate safely.

3) As a result, one of the three days was cancelled completely. The second started two hours late. And the third became a dangerous stampede as local officials noticed Defendants had oversold and ordered them to halt entry, but ticketholders – many of whom traveled great

- 1 -

distances to attend – rushed the gates; Defendants' security was unable to maintain access control or safety at the event, leading to many injuries.

4) Defendants lied to their guests at every opportunity. They explicitly lied to its guests regarding the reasons behind the much-curtailed event schedule. And they implicitly lied when they sold tickets to guests who reasonably expected Defendants would provide a safe – let alone lawful – environment when they had no intent to do so. Defendants will continue to injure the public until forced to desist

5) This is obviously a breach of contract, but Avant Gardner's reckless and/or intentional conduct with regards to Electric Zoo rises to the level of a fraud. Plaintiffs are individuals who paid for tickets to a safe event and were instead treated to a riot due to Defendants' greed, and they hereby sue for recovery of their ticket prices plus punitive damages on behalf of themselves and all similarly situated.

## JURY DEMAND

6) Plaintiffs demand a trial by jury on all issues so triable.

## PARTIES

7) Plaintiff Alexandra Avchukov is an individual who is a citizen of the State of Georgia. Avchukov purchased tickets to all three days of the Electric Zoo 2023 festival.

8) Plaintiff Quentin Chappat is an individual who is a citizen of New York County, New York. Chappat purchased tickets to all three days of the Electric Zoo 2023 festival.

9) Plaintiff Sandra Maesta Pereira is an individual who is a citizen of New York County, New York. Pereira purchased tickets to all three days of the Electric Zoo 2023 festival.

10) Defendant Avant Gardner, LLC (hereafter, "Avant Gardner") is a limited liability company formed, and headquartered, in the State of New York.

11) Defendant EZ Festivals, LLC (hereafter, "EZ Festivals") is a limited liability company formed in the State of Delaware and headquartered in the State of New York.

12) Defendant Jurgen Bildstein (hereafter, "Bildstein") is an individual residing and regularly doing business within the State of New York.

## JURISDICTION & VENUE

13) Personal jurisdiction is proper because all defendants are citizens of, and/or regularly conduct business within, the State of New York, and the incident that gave rise to the complaint occurred within the same.

14) Subject matter jurisdiction is proper under 28 U.S.C. § 1332(d)(2), as at least one Plaintiff and Defendant are citizens of different states, there are over 100 putative class members, and the total amount in controversy is likely to exceed $5,000,000.

15) Venue is proper because the incident that gave rise to the complaint occurred within the district boundaries for this Court.

## ALLEGATIONS OF FACT

### *Part 1: Business Identities*

16) Electric Zoo is a large music festival hosted annually in New York City during Labor Day weekend and has been ongoing for more than a decade, save for a pandemic-required break.

17) EZ Festivals is a business entity that nominally owns the "Electric Zoo" brand.

18) Avant Gardner is a business entity that, *inter alia*, owns and operates music-related events and a large Brooklyn event venue known as "Brooklyn Mirage."

19) Avant Gardner acquired EZ Festivals (directly or via purchase of an intermediary entity) in 2022.

20) From that point forward, Avant Gardner took over operations of Electric Zoo.

21) Avant Gardner uses its own officers and directors to manage the Electric Zoo event, and operates EZ Festivals and Electric Zoo out of its Brooklyn offices.

22) Avant Gardner uses its resources to promote the Electric Zoo event.

23) Avant Gardner uses its resources to staff the Electric Zoo event.

24) Avant Gardner uses its resources to book talent for the Electric Zoo event.

25) EZ Festivals is, therefore, simply an alter ego of Avant Gardner.

26) Avant Gardner, EZ Festivals, and the Electric Zoo brand are all controlled by a single owner: Bildstein.

27) Upon information and belief, Bildstein personally directed and/or approved the overselling and other dangerous and fraudulent conduct herein complained of.

### *Part 2: The 2023 Festival*

28) The 2023 edition of Electric Zoo was to be a 3-day event held on Friday, September 1st, Saturday, September 2nd, and Sunday, September 3rd.

29) Defendants sold tens of thousands of tickets for all three days, and festival-goers could buy tickets to any or all of the three event days.

30) However, the Friday event day was cancelled before it started and did not happen in any shape or form.

31) Defendants publicly announced via social media that the reason for this cancellation was "global supply chain issues."

32) This statement was a lie, and known to Defendants to be a lie when it was made.

33) The actual reason for Friday's cancellation was that Defendants failed to build, and have inspected and approved/permitted, the safe structures (stages, platforms, *etc.*) required to operate.

34) Upon information and belief, the primary cause of this failure is that Defendants had gained a reputation for failure to timely pay its workers and thus could not find sufficient qualified staff.

35) Further, the announcement was made on the day of the event when Defendants were well-aware the day prior that there was no chance of an on-time start.

36) Upon information and belief, the purpose of this delay was to allow Defendants to sell additional tickets to "after party" events at Brooklyn Mirage.

37) The Saturday event, scheduled for 1:00 PM to 11:00 PM, commenced approximately two hours late.

38) Ticketholders were given no advance notice of the delay.

39) Further, upon the opening of the gates, nearly all individuals faced substantial delays in entry. Many individuals had to wait for several additional hours to reach ticketing staff because of Defendants' inability adequately to staff ticketing personnel.

40) Thus, although Saturday was scheduled to be a 10-hour event, attendees experienced at most 8 hours and many experienced less than half of the event.

41) The exact reason for the delayed start is presently not known to Plaintiffs, but it is suspected that by Saturday morning, Defendants were still awaiting final approval for their construction and festival operations.

42) Sunday's event started on time, however issues began to arise when local law enforcement noticed that Electric Zoo had reached its lawful capacity only a few hours in, with thousands of attendees still waiting for access, ordered that no more attendees be admitted.

43) Thus, people who had paid for tickets were denied entry into the event.

44) The only way for this to happen is that Defendants knowingly sold more tickets than its unambiguous legal capacity.

45) Having spent considerable money and time – with many attendees traveling[1] from across country and some from out-of-country – denied festival-goers predictably "rushed the gate," pushing past and overwhelming security and entering the event over their objections.

---

[1] This lawsuit does not seek recovery for travel expenses; individuals who wish to recover for substantial travel-related damages, which are outside of the commonality of the class, may exclude themselves to recover separately.

46) These individuals – unchecked for weapons or drugs, now in far greater numbers than legally allowed and with security unable to maintain control – created an unsafe environment where many incurred physical injuries[2].

47) Despite having lost control of the security of their operation, Defendants shockingly continued the Sunday festival to its conclusion, paying no mind to the substantial risk that doing so placed upon the attendees.

48) The event was legally allowed 42,500 individuals.

49) Local law enforcement later estimated that at last 7,000 additional individuals were present, or approximately 17% more than legal capacity.

50) The actual number of tickets sold likely substantially exceeds 49,500, as some individuals had likely not yet arrived by the time access to the event was "closed;" Plaintiffs will identify the exact number during discovery.

51) At all times, Bildstein was in charge of the operations of the Electric Zoo festival.

52) Upon information and belief, Bildstein personally directed or authorized more tickets to be sold than could be legally accommodated.

---

[2] Likewise, this lawsuit does not seek recovery for damages for physical or mental injury, and individuals who wish to recover for such damages, which are outside of the commonality of the class, may exclude themselves to recover separately.

53) Upon information and belief, Bildstein personally directed or authorized the public responses of Electric Zoo, including that it contain false information, that the Friday cancellation notice be delayed until day-of-event, and that the Saturday delay not be announced.

### *Part 3: History of Dangerous Operations*

54) Avant Gardner and Bildstein are a notorious nuisance in New York City nightlife, widely known for unlawfully overcrowding their venues, employing abusive security, failing to pay those who work for them, running afoul of licensing and permitting requirements, and recklessly disregarding the safety of its patrons. In short, they are the worst-of-the-worst of bad actors in our local nightlife community.

55) Since its inception in 2017, the Brooklyn Mirage venue has repeatedly been cited by local officials and state regulators for extreme overcrowding and other serious safety hazards.

56) For example, in 2022, the venue settled an unprecedented 53 counts of charges by the New York State Liquor Authority ("SLA"), including multiple charges of employing unlicensed security guards, "sustained pattern of noise/disorder," refusing inspections, and even mislabeling goods for sale. The settlement required Avant Gardner to hire an independent security monitor and pay a $100,000 fine.

57) The SLA is not the only regulatory agency to have shut down Brooklyn Mirage: NYC Department of Buildings, NYC Department of Health & Mental Hygiene, and the New York Fire Department have each, on separate occasions, shuttered the venue for unsafe conditions.

58) Despite paying hundreds of thousands of dollars in fines, Brooklyn Mirage has not improved: tragically, at least two people have died subsequent to attending their events in 2023 alone, and the year is not over.

59) This year, Avant Gardner has also been sued by the independent security monitor for failing to grant it access and failing to pay it.

60) This year, Avant Gardner has also been sued for sexual assaults committed by its security guards upon patrons.

61) In short, overcrowding its events, failing at security, and disregarding the safety of its customers is, in fact, Defendants' *modus operandi*, and they will continue to do so until forced to close or until the fines, judgments, and settlements outweigh their profits.

## *Part 4: Class Allegations*

62) Plaintiff seeks certification of a single class: all who purchased a ticket to attend the 2023 edition of the Electric Zoo festival.

63) This class excludes all who did not purchase a ticket, including those working for Defendant, as well as those who resold their ticket to a third-party (but the third party *is* a member of the class) and professional resellers (those who purchased a ticket with intent to resell rather than attend) who may have unsold inventory.

64) All Plaintiffs in this action had tickets to all three days of the event, they each attempted to access all three days of the event, and they each were subject to the cancellations and unsafe conditions described *supra*.

65) It appears that there may be up to 50,000 tickets sold for each of the three days of the festival; because of overlap (people who purchased tickets for more than one day), the number of class members is expected to be between 50,000 and three times that number.

66) This putative class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

67) *Numerosity* – The size of the class is expected to be over 50,000 persons, making it impracticable to individually name all possible plaintiffs.

68) *Commonality* – Defendants deceived all class members in the same way: by offering for sale a safe, legal festival that they had no intent to deliver. Common legal questions would predominate individual actions, including the facts surrounding the event closures, the knowledge and intent of Defendants regarding dangerous conditions, and the contractual obligations of the parties (given that all possible plaintiffs made the same contractual agreement with Defendants).

69) *Typicality* – All class members paid for an experience that they did not get – regardless of which day or days for which they had purchased tickets – and were similarly injured by Defendants in the amount of their ticket fee.

70) *Adequacy* – Plaintiffs have no interest separate from, or in conflict with, those of the proposed class they seek to represent, and will fairly and zealously seek recovery for the entire class.

71) The Court should also consider the public interest in holding Defendants accountable using class proceedings, which are more likely than individual proceedings to deter future repeat conduct that threatens the public welfare.

## CLAIMS FOR RELIEF

### Counts 1-3 – Deceptive Acts and Practices (N.Y. GBL § 349)

*Against Avant Gardner, EZ Festivals, and Bildstein*

72) Defendants sold tickets to class members with an implied promise that they would entitle the class members to access to a safe festival environment.

73) Defendants had no intent on creating a safe environment, and instead knew that they would attempt to oversell the event, unlawfully, as much as they thought they could get away with.

74) Plaintiffs were deceived by Defendants' practices, as a reasonable person would have been deceived by the same.

75) Plaintiffs were injured by Defendants' practices because they were unable to enjoy the benefits promised by Defendants when they purchased their tickets, as well as due to wasted time and money in preparing for and traveling to the festival each day, and sustained injury that they would not have but for Defendants' lies.

76) Defendants committed these acts willfully and knowingly.

77) Avant Gardner (Count 1), EZ Festivals (Count 2), and Bildstein (Count 3) are thus liable to Plaintiffs for deceptive acts and practices in violation of N.Y. GBL § 349.

### Count 4 – Breach of Contract

#### *Against EZ Festivals*

78) Plaintiffs repeat and re-allege the paragraphs under Counts 1-3 as if hereby stated in full.

79) In exchange for consideration provided by Plaintiffs (the ticket fee), EZ Festivals was contractually bound[3] to provide a safe entertainment experience for a full three days.

80) EZ Festivals, in fact, did not provide a single full day of safe festival on any of the three days of Electric Zoo in 2023, and the portion of the festival that did happen was so marred by delays, danger, and deception such that EZ Festivals has not even partially performed in any way meaningful to those on the other side of the contract.

81) This constituted a breach if EZ Festival's duties under the contract.

82) There are no unsatisfied conditions precedent to EZ Festival's performance.

---

[3] The contract between the parties was implicitly created by the offering, followed by purchase, of a ticket. There is thus no signed writing to attach to the Complaint.

83) Neither EZ Festivals nor any party acting on their behalf have renumerated Plaintiffs in any way.

84) Plaintiffs were damaged by EZ Festival's practices because they were unable to enjoy the benefits promised by Defendants when they purchased their tickets.

85) Plaintiffs are thus entitled to damages for breach of contract against EZ Festivals.

### Count 5 – Unjust Enrichment

*Against EZ Festivals*

86) Plaintiffs repeat and re-allege the paragraphs under Count 4 as if hereby stated in full.

87) In the alternative to a breach of contract, EZ Festivals was paid consideration by Plaintiffs for services that were not rendered.

88) It would be entirely unjust to allow EZ Festivals to retain *any* compensation for cramming Plaintiffs into an unlawfully overcrowded and excessively delayed disaster of a festival.

89) EZ Festivals was thus unjustly enriched, and Plaintiffs seek damages for the same.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Actual damages in the amount of the face value of each ticket purchased by each class member, jointly and severally against all defendants if they are found liable under a fraud theory, or against EZ Festivals if only found liable via breach of contract or unjust enrichment (estimated at approx. $12,000,000, to be confirmed via discovery),

ii. Punitive damages in the amount of three times the actual damages for each class member, not to exceed $1,000 per class member, pursuant to N.Y. GBL § 349(h), jointly and severally against all defendants (estimated at approximately $35,000,000, to be confirmed via discovery).

iii. Pre- and post-judgment interest as allowed by law,

iv. Attorney's fees for this action, as explicitly provided by N.Y. GBL § 349(h) or otherwise,

v. Cost of the action, and

vi. Any other such relief as the Court deems appropriate.


Dated:  New York, NY  
       September 16th, 2023

Respectfully submitted,

_____/s/Jonathan Corbett_____  
Jonathan Corbett, Esq.  
CORBETT RIGHTS, P.C.  
Attorney for Plaintiff  
CA Bar #325608 (*pro hac vice pending*)  
5551 Hollywood Blvd., Suite 1248  
Los Angeles, CA 90028  
E-mail: jon@corbettrights.com  
Phone: (310) 684-3870  
FAX:   (310) 675-7080